UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                                    :
HONEEDEW INVESTING LLC,                                             :
                                                                    :
                                    Plaintiff,                      :
                                                                    :
                    -v-                                             :          19 Civ. 8951 (JPC)
                                                                    :
CARLOS ANDRES ABADI, *et al.*,                                      :          <u>ORDER</u>
                                                                    :
                                    Defendants.                     :
                                                                    :
--------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      On April 11, 2025, the Court received an email from an individual representing to be

Defendant Carlos Andres Abadi.  This email enclosed a letter, which is attached to this Order,

submitted on behalf of the substituted Defendants in this action.  In light of this development, the

April 16, 2025 default judgment hearing is adjourned *sine die*.  Plaintiff shall file a response to the

contents of Mr. Abadi's letter by April 18, 2025.

      SO ORDERED.

Dated: April 11, 2025
      New York, New York
                                 JOHN P. CRONAN
                         United States District Judge

# CARLOS ABADI

20 Gretchen Ct.
Oldsmar, FL 34677
Tel: (917)309-5588

Email: carlosandresabadi@gmail.com

April 11, 2025

**BY ELECTRONIC MAIL (CronanNYSDChambers@nysd.uscourts.gov)**

The Honorable John P. Cronan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 12D
New York, NY 10007

**Re: Honeedew Investing LLC v. Francia Luisa Guthmann, et al.**
**Civil Action No.: 19-CV-8951-(JPC)**
**Letter Motion to Dismiss Default Judgment Application and Request for Evidentiary**
**Hearing on Rule 25(a)(1) Compliance**

Dear Judge Cronan:

I respectfully submit this letter motion on behalf of my mother, Francia Luisa Guthmann, and my siblings, Miguel Claudio Abadi and Yvonne Abadi (collectively, the "Substituted Defendants") in the above-referenced matter. While I am not an attorney, I am intimately familiar with the facts of this case, as I am the son of the late Jose Abadi (the original defendant) and Francia Luisa Guthmann, and brother to Miguel and Yvonne. The Substituted Defendants cannot afford U.S. counsel due to financial constraints, and I respectfully request that the Court accept this pro se submission on their behalf.

This letter addresses threshold procedural defects that preclude entry of default judgment and indeed require dismissal of the entire action against the Substituted Defendants. Most critically, documentary evidence demonstrates that Plaintiff Honeedew Investing LLC ("Plaintiff") received notice of my father Jose Abadi's death on April 30, 2023—more than six months before filing its Rule 25(a)(1) substitution motion—directly contradicting counsel's sworn declaration to this Court.

## FACTUAL BACKGROUND

My father, Jose Abadi, passed away on April 30, 2023. On that same day, my then-counsel, Mr. David G. Liston, explicitly informed Plaintiff's counsel via email that "Jose Abadi, the father of

our client, Carlos Abadi, passed away early this morning." This email was addressed directly to Plaintiff's counsel, Mr. Eric S. Medina, and was also filed with the New York Supreme Court in related proceedings (Honeedew Investing LLC v. Carlos & Barbara Abadi, Index No. 652654/2017). A true and correct copy of this email is attached as Exhibit A.

Despite this contemporaneous written notice, Mr. Medina submitted a sworn declaration to this Court on March 7, 2025 stating: "In November of 2023, Plaintiff learned that Jose Abadi had passed away." Medina Declaration ¶17. This representation, made under penalty of perjury pursuant to 28 U.S.C. §1746, is demonstrably false based on the April 30, 2023 email.

**LEGAL ARGUMENT**

**I. The Substitution Motion Was Untimely and Must Be Dismissed**

Federal Rule of Civil Procedure 25(a)(1) provides that "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. ***If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed***." (emphasis added).

The Second Circuit has consistently held that the 90-day time limit in Rule 25(a)(1) is strictly enforced. See Unicorn Tales, Inc. v. Banerjee, 138 F.3d 467, 470 (2d Cir. 1998) (affirming dismissal where motion for substitution was filed after the 90-day deadline); Kernisant v. City of New York, 225 F.R.D. 422, 431 (E.D.N.Y. 2005) (noting "Rule 25(a) does not authorize a district court to extend [the 90-day] time period once it has expired").

Here, Plaintiff received actual notice of my father's death on April 30, 2023, yet did not file its substitution motion until November 6, 2023 [Dkt. 80-83]—189 days later, more than twice the permitted time period. This delay mandates dismissal under the express terms of Rule 25(a)(1).

**II. The Court Should Vacate Its Prior Substitution Order as Based on Material Misrepresentations**

The Court's July 15, 2024 Order [Dkt. 94] granting substitution was issued without the benefit of the crucial information regarding the actual timing of Plaintiff's notice of my father's death. Courts have inherent authority to vacate orders obtained through misrepresentations to the Court. See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (recognizing courts' inherent power to vacate judgments obtained through fraud upon the court).

The material discrepancy between the April 30, 2023 email and the Medina Declaration strongly suggests that the Court's substitution order was procured through a misrepresentation that concealed the untimeliness of the substitution motion. As such, the Court should exercise its inherent authority to vacate that order.

**III. At Minimum, the Court Should Hold an Evidentiary Hearing on Compliance with Rule 25(a)(1)**

Given the documentary evidence contradicting Mr. Medina's sworn declaration, at minimum, due process requires a hearing to determine when Plaintiff first received notice of my father's death. See In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 246 (S.D.N.Y. 2005) (holding that "serious disputes about material facts... require an evidentiary hearing"). The chronology of notice is a threshold jurisdictional issue that must be resolved before any default judgment could properly be entered.

**IV. Service of the Substitution Motion Was Procedurally Defective**

Rule 25(a)(3) requires that a motion to substitute "must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4." Here, service on the Substituted Defendants, who were nonparties at the time, required compliance with Rule 4, including adherence to the Hague Convention for international service. While Plaintiff eventually effected Hague Convention service on August 29, 2024 [Dkt. 106], this service occurred after the Court had already granted the substitution motion—rendering it ineffective for purposes of the original motion.

The alternative methods of service relied upon by Plaintiff—including FedEx and "Carta Documento"—do not satisfy Rule 4's requirements for service in Argentina. See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705 (1988) (holding that when service is to be effected in a foreign country that is a signatory to the Hague Convention, the Convention's procedures are mandatory).

**REQUESTED RELIEF**

For the foregoing reasons, the Substituted Defendants respectfully request that the Court:

1. Deny Plaintiff's pending Motion for Default Judgment;
2. Order an immediate stay of all proceedings pending resolution of the Rule 25(a)(1) compliance issue;
3. Schedule an evidentiary hearing focused solely on when Plaintiff first received notice of my father's death and whether the substitution motion was filed within the mandatory 90-day period;
4. Upon determination that the substitution motion was untimely, vacate the July 15, 2024 Order granting substitution and dismiss this action as to the Substituted Defendants pursuant to Rule 25(a)(1);
5. Grant such other and further relief as the Court deems just and proper.

In the interests of judicial economy and fundamental fairness, these threshold procedural issues must be resolved before any consideration of default judgment. The documentary evidence strongly suggests that the substitution motion was untimely filed in contravention of Rule 25(a)(1)'s mandatory dismissal provision, and that misrepresentations to the Court may have occurred regarding this critical timeline.

Respectfully submitted,



**Carlos Abadi**
Son of Jose Abadi (deceased) and Francia Luisa Guthmann
Brother of Miguel Claudio Abadi and Yvonne Abadi

**Enclosures:**
Exhibit A - Email dated April 30, 2023, from David G. Liston regarding Jose Abadi's death
Exhibit B - Declaration of Eric S. Medina concerning, inter alia, the date Honeedew learnt about
Jose Abadi's death.

cc: Hon. Valerie Figueredo (via email, FigueredoNYSDChambers@nysd.uscourts.gov)
Eric S. Medina, Esq. (via email, emedina@medinafirm.com)
Matthew J. Aaronson, Esq. (via email, matthew.aaronson@troutman.com)

**Subject:** FW: Honeedew Investing LLC vs. Carlos & Barbara Abadi Index No. 652654/2017 (Stipulated Request for Short Adjournment) 5/1/23 Hearing [NYSECF 375]

**Date:** Sunday, April 30, 2023 at 12:01:14 PM Eastern Daylight Time

**From:** David G. Liston

**To:** SFC-Part42-Clerk@nycourts.gov

**CC:** Eric S. Medina, Esq., Jun H. Park, Alex G. Patchen

**BCC:** Ronald Abramson, Ari J. Jaffess, Gina Kim, David G. Liston, Catherine Christian

**Attachments:** HD v. Abadis - 4-27-23 Revised Stipulation - LA Edits[96].docx, HD v. Abadis - 4-27-23 Revised Stipulation - LA Edits[96].pdf, image001.png, image002.png, image003.png, image004.png

Dear Mr. Gonsieski:

As a follow-up to the notes below from counsel for Honeedew, we write to report that Jose Abadi, the father of our client, Carlos Abadi, passed away early this morning.  Carlos, who had been tending to his ailing father in Argentina, will need to remain in Argentina for a few days to attend his father's funeral and tend to his mother.

Given this sad news, as well as for the reasons outlined in the joint stipulation filed this past Thursday (extra copies attached), we respectfully ask that the Court grant our joint request for an adjournment of the hearing scheduled for tomorrow morning.

We will use this additional time to continue our efforts to meet and confer with counsel for Honeedew to reach agreement regarding the admissibility of exhibits at the hearing and as to what was admitted into evidence at the 2019 hearing, as well as for the other purposes referenced in the joint stipulation requesting adjournment.

Respectfully submitted,

David G. Liston

**David G. Liston**

direct:   (212) 257-1644
mobile: (917) 543-1821
david.liston@listonabramson.com
Bio | https://www.listonabramson.com/

**LISTON ABRAMSON LLP**
**Intellectual Property, White Collar, and Business Disputes & Strategy**



The Chrysler Building | 405 Lexington Avenue, 46th Floor | New York, New York 10174

*This communication is confidential and may contain privileged information.*
*If you receive this communication in error, please delete it and inform the sender.  Thank you.*

**From:** Eric S. Medina, Esq. <Emedina@medinafirm.com>
**Date:** Friday, April 28, 2023 at 2:15 PM
**To:** SFC-Part42-Clerk <SFC-Part42-Clerk@nycourts.gov>, David G. Liston <david.liston@listonabramson.com>, Alex G. Patchen <alex.patchen@listonabramson.com>
**Subject:** Re: Honeedew Investing LLC vs. Carlos & Barbara Abadi Index No. 652654/2017 (Stipulated Request for Short Adjournment) 5/1/23 Hearing [NYSECF 375]

Dear Mr. Gonsieski together with counsel for Defendants we were hoping to determine if Justice Bannon has had an opportunity to consider the stipulation of adjournment filed yesterday in connection with Monday morning's hearing.   Thank you in advance for your consideration.

Respectfully,



Eric S. Medina, Esq.
Medina Law Firm LLC
www.medinafirm.com



---

**From:** Eric S. Medina, Esq. <Emedina@medinafirm.com>
**Date:** Thursday, April 27, 2023 at 7:17 PM
**To:** SFC-Part42-Clerk <SFC-Part42-Clerk@nycourts.gov>, David G Liston (Work)
<david.liston@listonabramson.com>, Alex G. Patchen (Work) <alex.patchen@listonabramson.com>
**Subject:** Re: Honeedew Investing LLC vs. Carlos & Barbara Abadi Index No. 652654/2017 (Stipulated Request for Short Adjournment) 5/1/23 Hearing [NYSECF 375]

Dear Mr. Gonsieski:

Please find the annexed stipulation for adjournment in MSWord and PDF format submitted for the Court's consideration.

Thank you in advance for your consideration.

Respectfully,

Eric S. Medina, Esq.
Medina Law Firm LLC
www.medinafirm.com



---

**From:** Eric S. Medina, Esq. <Emedina@medinafirm.com>
**Date:** Wednesday, April 12, 2023 at 5:57 PM
**To:** SFC-Part42-Clerk <SFC-Part42-Clerk@nycourts.gov>, David G Liston (Work)
<david.liston@listonabramson.com>, Alex G. Patchen (Work) <alex.patchen@listonabramson.com>
**Subject:** RE: Honeedew Investing LLC vs. Carlos & Barbara Abadi Index No. 652654/2017 (Stipulated Request for Short Adjournment) 4/25/23 Hearing [NYSECF 375]

Thank you Mr. Gonsieski:

Please see the attached stipulation submitted in MSWord and PDF.

Respectfully,

Eric S. Medina, Esq.
Medina Law Firm LLC
www.medinafirm.com

641 Lexington Avenue
Thirteenth Floor
New York, NY 10022
Tel.  (212) 404-1742
Fax.(888) 833-9534
Cell. (347) 829-5297
emedina@medinafirm.com

---

**From:** SFC-Part42-Clerk <SFC-Part42-Clerk@nycourts.gov>
**Sent:** Wednesday, April 12, 2023 10:34 AM
**To:** Eric S. Medina, Esq. <Emedina@medinafirm.com>; SFC-Part42-Clerk <SFC-Part42-Clerk@nycourts.gov>; David G Liston (Work) <david.liston@listonabramson.com>; Alex G. Patchen (Work) <alex.patchen@listonabramson.com>
**Subject:** RE: Honeedew Investing LLC vs. Carlos & Barbara Abadi Index No. 652654/2017 (Stipulated Request for Short Adjournment) 4/25/23 Hearing [NYSECF 375]

Good morning,

Please provide a stip with the date of may 1st and reason for the adjournment.

Thank you

**_Gregory Gonsieski_**
**Senior Court Clerk**
**Judge Bannon - Part 42**
**Supreme Civil NY**

---

**From:** Eric S. Medina, Esq. <Emedina@medinafirm.com>
**Sent:** Wednesday, April 12, 2023 10:04 AM
**To:** SFC-Part42-Clerk <SFC-Part42-Clerk@nycourts.gov>; David G Liston (Work)
<david.liston@listonabramson.com>; Alex G. Patchen (Work) <alex.patchen@listonabramson.com>
**Subject:** Honeedew Investing LLC vs. Carlos & Barbara Abadi Index No. 652654/2017 (Stipulated Request for
Short Adjournment) 4/25/23 Hearing [NYSECF 375]

Dear Clerk:

In light of a scheduling conflict requiring court-ordered mediation to take place on April 25, 2023 out of state
in a proceeding in Federal Court (which despite diligent effort I have been unable to postpone) I seek with the
consent of counsel to defendants, a short adjournment of the proceedings before Justice Bannon scheduled
for April 25, 2023.  In connection with this request I understand that the Court may have availability the
following and can represent that the Defendants consent to an adjourned to date of May 1, 3, or 5.  The
undersigned is available either the 1st or the 5th of May.  If the Court has availability and is so inclined to
consider adjournment, the parties are prepared to file a stipulation.

Respectfully submitted,

Eric S. Medina, Esq.
Medina Law Firm LLC
www.medinafirm.com

641 Lexington Avenue
Thirteenth Floor
New York, NY 10022
Tel.  (212) 404-1742
Fax.(888) 833-9534
Cell. (347) 829-5297
emedina@medinafirm.com

Please be CAREFUL when clicking links or opening attachments from external senders.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X



:
HONEEDEW INVESTING LLC,                          :
:            Civil Action No.: 19-CV-8951-(JPC)
              Plaintiff,          :
:
       -against-                                 :
:
FRANCIA LUISA GUTHMANN, MIGUEL                   :
CLAUDIO ABADI, and YVONNE ABADI,                 :
:
              Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### DECLARATION OF ERIC S. MEDINA IN SUPPORT
### OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

**ERIC S. MEDINA** , pursuant to 28 U.S.C. §1746, declares as follows under the penalty

of perjury:

1.      I am a member of the bar of this Court and a partner of the firm of MEDINA LAW

FIRM LLC ("MLFLLC"), counsel for plaintiff Honeedew Investing LLC[1] ("Honeedew" or

"Plaintiff") in the above-entitled action.  I am fully familiar with the matters I describe below.

2.      I respectfully submit this declaration pursuant to 55.2 of the Local Civil Rules for

the Southern District of New York, in support of Plaintiff's application for entry of a default

judgment on Plaintiff's claims in its amended complaint [Dkt. 43] ("Amended Complaint")

asserted initially against Jose Abadi ("Jose Abadi" or "Deceased Defendant") and against the

substituted defendants: Francia Luisa Guthmann ("Francia"), Miguel Claudio Abadi ("Miguel")

---

[1] At the commencement of these proceedings, undersigned counsel was co-counsel to Troutman Pepper Hamilton Sanders LLP ("TPHS") for Plaintiff in this case who subsequently substituted MLFLLC as sole counsel for Plaintiff but whom nevertheless rendered legal services to Plaintiff which are described in this Declaration for which Plaintiff seeks to include in its application for default judgment against the Defendants.

1

and Yvonne Abadi ("Yvonne," and together with Francia and Miguel, referred to collectively as, the "Defendants" or "Substituted Defendants").

## I.     Overview

3.     The Plaintiff's claims in this action all arise from acts, omissions and occurrences relating to the actions of Carlos Abadi ("Carlos") and Barbara Abadi ("Barbara") husband and wife judgment debtors indebted to Plaintiff.  Plaintiff served Jose Abadi in this case as described in Plaintiff's first application for default judgment in December of 2021 [Dkt.'s 20-25] ("Default Application I") who then appeared through counsel and defended the case until his counsel withdrew from representation in or about October of 2022 [Dkt. 65].  Jose Abadi would later pass away during this litigation and Plaintiff continued this action against the Substituted Defendants upon learning of his passing and moving for substitution under Fed. R. Civ. Proc. 25 [Dkt.'s 80-83] which was granted by Opinion and Order dated July 15, 2024 [Dkt. 94].  As discussed herein, Plaintiff then served the relevant substitution pleadings and orders on the Substituted Defendants, including this Court's order of January 28, 2025 [Dkt. 114] and Memo Endorsed Order of February 18, 2025 [Dkt. 117] and in conformity with those orders now moves for the entry of default judgment against the Substituted Defendants who have to date, failed to defend or otherwise respond in this action despite knowledge of and service of pleadings and orders.

## II.     COMMENCEMENT OF THIS ACTION AGAINST JOSE ABADI

4.     Promptly upon initiation of the initial complaint in this matter, the Plaintiff requested the issuance of a summons from the Clerk of this Court on September 27, 2019 [Dkt. 4].

5.     Jose Abadi, then living, was believed to be domiciled in the City of Buenos Aires in the country of Argentina.  In accordance with Federal Rule of Civil Procedure 4(f)(1) service was to be effectuated pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention").

4929-4190-5957, v. 2

6.      Attached as **Exhibit "A"** is a true and accurate copy of the original complaint in this matter.

7.      As detailed in Plaintiff's letter to the Court on October 23, 2020, Plaintiff was caused to effectuate service through the Argentina Central Authority in accordance the version of the Hague Convention adopted by the nation of Argentina which was recognized by judicial authorities in this District.  [Dkt. 9].

8.      On November 4, 2019, following the completion of lengthy translations of the pleadings filed in this case from English to Spanish and of procurement of an apostille in the nation of Argentina, the Plaintiff transmitted its request for service of the summons and complaint in this matter upon the Argentine Central Authority.      **Exhibit "B,"** is annexed to Default Application I at [Dkt. 9-1] (pages 1-46) and is a copy of the Plaintiff's request to the Argentine Central Authority .[2]

9.      Annexed hereto as **Exhibit "C"** is a true and accurate copy of the Plaintiff's proof of transmittal and receipt by the Argentine Central Authority of the service package which was delivered on November 7, 2019.

10.     For many months, Plaintiff awaited service on Deceased Defendant which Plaintiff was informed was delayed due to staffing shortages and limited operations relating to a national debt crisis in Argentina and the COVID-19 pandemic.

11.     On October 27, 2021, Plaintiff was notified service of process was made upon Jose Abadi.  Following processing at the Central Authority on October 7, 2021, the agent employed by the Argentine Central Authority effectuated service of the summons and complaint upon Jose Abadi by serving a complete copy at the Defendant's home in Buenos Aires upon Jose Abadi's

---

[2] The Argentine Central Authority is also known as the Argentine Ministry of Foreign Affairs information may be located by accessing the website https://www.cancilleria.gob.ar/en

employee/servant who attended the process server upon his arrival to the Jose Abadi's residence. Annexed hereto as **Exhibit "D,"** is a true and accurate copy of the Plaintiff's Certificate of Service filed December 2, 2021 [Dkt. 12].

12.    Defendant's time to move or otherwise respond to the Complaint expired on November 17, 2021 and the Clerk issued a Clerk's Certificate of Default against Jose Abadi on December 10, 2021 (a copy of which is attached as **Exhibit "E").**

13.    On December 15, 2021, Plaintiff served copies of the Clerk's Certificate of Default upon Jose Abadi with copies to two (2) New York State attorneys with two (2) separate law firms both with offices in New York City whom previously certified under oath in related proceedings against judgment debtors Carlos and Barbara (collectively, the "Abadis" or "Judgment Debtors") to having been paid legal fees by Jose Abadi purportedly for the benefit of the Judgment Debtors [Dkt. 25].

14.    Following service, on January 12, 2022, counsel for Jose Abadi (David Liston Esq., and Alex Patchen Esq.), who were at the time counsel to the Judgment Debtors in New York Supreme Court proceedings, appeared in this case and filed notices of appearance [Dkt.' 27, 28] on behalf of Jose Abadi.

15.    Counsel for Jose Abadi then opposed Plaintiff's Default Application I.  In denying Default Application I, the Court permitted Jose Abadi to answer the Plaintiff's initial complaint which was answered through counsel on January 28, 2022 [Dkt. 35].

16.    Plaintiff, then learning of additional transgressions by Jose Abadi amended its initial complaint on March 17, 2022 [Dkt. 43] to assert additional claims.[3]  Jose Abadi answered the Amended Complaint on March 30, 2022 [Dkt. 44].  During the pendency of a motion to compel

---

[3] The Amended Complaint is the operative pleading for purpose of this Motion.

Jose Abadi and others to sit for deposition and provide responsive discovery, counsel for Jose Abadi sought leave to withdraw from the case. Jose Abadi's counsel was granted leave to withdraw by Decision and Order on October 3, 2022 [Dkt. 65]. Plaintiff conducted third party discovery of JP Morgan Chase Bank, an institution where Jose Abadi then maintained extensive banking relationships in connection with claims asserted in the Amended Complaint which occupied ample time and was also met with resistance by the bank.

17.     In November of 2023, Plaintiff learned that Jose Abadi had passed away. Jose Abadi died on or about May 5, 2023. Contemporaneously with learning of Jose Abadi's death, Plaintiff became aware that the Substituted Defendants had commenced a process in the nation of Argentina to distribute significant assets of Jose Abadi to themselves. *See* Motion to Substitute [Dkt.'s 80-83] which was granted by Opinion and Order dated July 15, 2024 [Dkt. 94] ("Substitution Decision"). The Substitution Decision added the Substituted Defendants as parties to this case in the stead of Jose Abadi.

*Service of the Substitution Pleadings*

18.     Contemporaneously, with the filing of the motion for substitution on November 6, 2023, [Dkt.'s 81-83] ("Motion") Plaintiff transmitted copies of the Motion to the Substituted Defendants by Federal Express mail to the last known addresses of the Substituted Defendants in Argentina. Plaintiff also contemporaneously contracted ABC Legal Services ("ABC") to serve copies of the Motion upon the Substituted Parties in the nation of Argentina pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"). Plaintiff had certified translations of the Motion documents prepared and on or about January 16, 2024 ABC confirmed transmittal of the Motion to the Argentine Central Authority. The Argentine Central Authority served the documents on August 29, 2024 as set forth in the Certificate of Service filed on January 6, 2025 [Dkt. 106]. Plaintiff

further served copies of the Substitution Motion through Fedex and locally in Argentina through the process of "Carta Documento" on March 12, 2024 (which is a process similar to certified mail). The Substituted Defendants indeed received the "Carta Documento" and responded to the same on March 15, 2024. *See* [Dkt. 92-3]. In the summer of 2024 in connection with NY State Supreme Court proceedings relating to the Judgment, Honeedew obtained a copy pursuant to an Order of the Supreme Court of certain data files on Carlos Abadi's cell phone. Annexed hereto as **Exhibit "O,"** is a true and accurate copy of the "Whats App" message and attachment from Carlos Abadi's cell phone memorializing communications on March 15, 2024, in which it appears that Carlos Abadi both communicated the "Carta Documento" documents to the Substituted Defendants and wrote the response himself the Substituted Parties and had them sign them. One need only compare [Dkt. 92-3] the response received from the Substituted Defendants in Argentina to Exhibit "O," to conclude that Substituted Defendants had ample knowledge of these proceedings in addition to their receipt of process via the Hague Convention and FedEx at all times coordinating with Carlos Abadi.

## III.    ORIGINS OF THE CLAIMS IN THE CASE

19.    Prior to 2016, Plaintiff maintained an investment account at Abadi & Co., an advisory firm formerly owned by Judgment Debtor Carlos Abadi. *See* Amended Complaint at ¶11.

20.    In December 2015, Judgment Debtor Carlos Abadi advised Plaintiff that Abadi & Co. was unable to honor withdrawal requests from its customers, including Plaintiff. In the months that followed, Abadi & Co. engaged in discussions with Plaintiff regarding the return of the funds held by Abadi & Co to its customers. In connection with those discussions, Defendant travelled to New York and attended a meeting on February 9, 2016 at the office of Judgment Debtor Carlos Abadi's attorney at 777 Third Avenue, New York, New York, where Defendant offered to

6

guarantee the obligations of Abadi & Co. to its customers and offered for the JPM NY Account to be used as security for the repayment of the funds owed to Abadi & Co.'s customers.  While a draft agreement which included such terms was prepared, Jose Abadi later refused to execute such agreement.  *See* Amended Compl at ¶¶11-16.

21.     On or about November 9, 2016, Judgment Debtors and Plaintiff entered into a settlement agreement wherein Judgment Debtors agreed to pay Plaintiff $4,603,408.23, plus interest by April 28, 2017 and provided confessions of judgment to secure their obligations under the settlement agreement.  *See* **Exhibit "F" D**eclartation in support of Default Application I at [Dkt. 22-2 Ex. F) entered in the Supreme Court of the State of New York.

### A.     Plaintiff Obtains the Judgment against the Judgment Debtors

22.     Judgment Debtors failed to pay the amounts due under the settlement agreement by April 28, 2017 and as such, the Judgment was entered on May 17, 2017.  *See Id*.

23.     As of the date of the Judgment May 17, 2017, Judgment Debtor Carlos Abadi owned, among other assets, an apartment 1501 located at Rambla Williman – Parada 19 Mansa y Camacho, Maldonado, Uruguay (the "Uruguay Apartment") and Judgment Debtors owned, among other assets, an apartment in Buenos Aires, Argentina located at Calle Parera 37:47, Second Floor (the "Argentina Apartment"), as well as a co-op located at 900 5th Avenue, Apt 2B, New York, New York.

24.     On or about May 17, 2017, Jose Abadi was fully aware of the amounts owed by Judgment Debtors to Plaintiff and the Judgment and its entry.

**B.    Fraudulent Conveyance Claims (First, Second, and Third Causes of Action)**

*The Uruguay Transfer*

25.    In connection with extensive proceedings in the Supreme Court of the State of New York by the Plaintiff to collect upon the Judgment and within days of an upcoming contempt hearing to hold the Judgment Debtors in contempt of court orders for failure to make disclosure of assets, the Abadis admitted that following entry of the Judgment and at a time when insolvent, Carlos Abadi transferred his sole ownership interest in the Uruguay Apartment to the Jose Abadi without consideration.    Attached hereto as **Exhibit "G"** is a true and accurate copy  of  correspondence and sworn affidavits received from counsel for the Judgment Debtors disclosing that which had previously been concealed, that Jose Abadi was the recipient of a transfer of title to the Uruguay Apartment from Judgment Debtor Carlos Abadi which is described in the Amended Complaint.  In his answer prior to his death, Jose Abadi admitted that the transfer took place but "denies that Carlos Abadi was the 'beneficial owner.'"  [Dkt. 44, ¶15].

*Argentina Transfers of Money*

26.    The Argentina Apartment owned by the Judgment Debtors is unencumbered and was believed to be worth in excess of $3 million dollars at the time of commencement of this case, Plaintiff is unaware of the value of the Argentina Apartment today but believes that it has reduced in value to at least $1.5 million U.S. dollars.  Commencing for a period of 1 year starting September 1, 2017 the Judgment Debtor Carlos Abadi together with Barbara Abadi executed a lease for the Argentina Apartment which was administered by Jose Abadi which yielded a monthly rental sums of $8,300 per month.   A true and accurate copy of the lease identifying Jose Abadi as the  representative for the Abadis in Argentina annexed hereto as **Exhibit "H."**

27.    For the months of November 1, 2017 through July 1, 2018, Jose Abadi collected $74,700 in rents on account of the Argentina Apartment which should have been payable to

Plaintiff in connection with the Judgment.  Further pursuant to deposition testimony dated October 22, 2018, the Judgment Debtor admitted that the Defendant was Judgment Debtor's representative in the country of Argentina.  Defendant collected all sums payable to the Judgment Debtors on account of the Argentina Apartment and in addition collected the proceeds due to the Judgment Debtors from a $6,000 insurance claim relating to a peril at the Argentina Apartment.  These transfers were made at a time when the Judgment Debtors were insolvent and these transfers are without consideration.  Attached hereto as **Exhibit "I"** are true and accurate copies of deposition transcripts excerpts from the deposition of Carlos Abadi concerning his transfer of rent payments to Jose Abadi as well as insurance proceeds.

**C.**     **Aiding and Abetting a Fraud (Count IV) & Tortious Interference with Collection of a Judgment (Count V)**

*Decision Boundaries Fraudulent Activity*

28.     Throughout the entire course of the Plaintiff's proceedings against Judgment Debtors, Jose Abadi has been involved closely with the Judgment Debtors and has been the recipient of transfers described herein and has made numerous expenditures for the benefit of the Judgment Debtors towards legal counsel to defend against enforcement of the Judgment entered against the Abadis.[4]  By way of example, Jose Abadi (and it is believed his wife Francia) are the owners of Decision Boundaries, LLC, a Delaware Corporation consulting firm with a principal place of business located at 590 Madison Avenue, New York, New York ("Decision Boundaries").

29.     Until late 2024, Decision Boundaries advertised its services in this jurisdiction through      its      internet      website      bearing      uniform      resource      locator https://www.decisionboundaries.com.  Plaintiff understands that Decision Boundaries continues

---

[4] It appears that Francia has continued this pattern by engaging counsel here in New York for the benefit of the Judgment Debtors wiring $40,000.00 to a New York attorney as recently as May of 2024.  Copies of such transfer are annexed hereto **Exhibit "N."**

9

to operate and receive income though its activities which are lauded on its website and can still be accessed on the online internet archive a/k/a the "wayback machine," at https://web.archive.org/web/20240104184326/https://decisionboundaries.com/.

30.     Decision Boundaries was and is still operated by Jose Abadi's son, the Judgment Debtor Carlos Abadi.  Under New York law, the Judgment Debtors' earnings were subject to garnishment to the satisfaction of the Judgment pursuant to CPLR §5231. Following the entry of the Judgment, Plaintiff came to learn that Carlos Abadi was shielding his income and lavish personal expenditures for his benefit through his legal entity, Abadi & Co.  Shortly after learning of Carlos Abadi's means of concealing his income, the New York County Sheriff conducted an execution sale against Carlos Abadi's interest in Abadi & Co. which was consummated on February 27, 2019.  *See* Amended Compl. at ¶¶ 26-31.

31.     Having suffered the loss of his legal entity through which Carlos Abadi could shield his income and continue to avoid his obligations under the Judgment, between February 27, 2019 and March 2019, Jose Abadi conspired with Carlos Abadi to form a new entity to enable him to shield his income from the Judgment, that entity is Decision Boundaries LLC. *See Id.*  Jose Abadi was aware of the Judgement and knew of the liabilities that were and continue to be owed to Plaintiff and participated in a scheme whereby Carlos Abadi would shield his income from the Judgment.

32.     At all times throughout, Jose Abadi knew of and was aware of the Judgment and conspired to assist Carlos Abadi evade substantial liabilities on the Judgment.  Between July of 2020 and December of 2021, Decision Boundaries had gross sales of $926,798.95.  Attached hereto as **Exhibit "J,"** are copies of bank statements from Decision Boundaries for the relevant period.

4929-4190-5957, v. 2

33.     In calendar year 2021, Carlos Abadi generated nearly $100,000 per month in consulting services from banks in the nation of Lebanon $30,000 of which was paid to Jose Abadi. Jose Abadi received approximately $278,039.69 from Decision Boundaries yet did no work for the company, was not a signatory on the Decision Boundaries bank account, and provided service other than a ploy to conceal the income of Carlos Abadi.  *See* Amended Compl. ¶¶64-68

## IV.     Proposed Damages and Calculation Therefore

34.     As set forth in the Amended Complaint the Plaintiff believes as of the time of its initial claim, that the value of the Uruguay Apartment was at least $500,000 on October 17, 2017, and indeed the Plaintiff believes that the Uruguay Apartment was worth substantially more in light of its recognition as the 'Monaco of South American Jet Setters.'[5]  Plaintiff asserts that the property may have decreased in value as set forth in the attached property appraisal dated May 20, 2022 for the Uruguay Apartment but nevertheless had a minimum value of $352,000 U.S. Dollars.  Annexed hereto as **Exhibit "K"** is a true and accurate copy of the Property Appraisal of Gerardo Vinoles of Workplace Real Estate based in Montevideo, Uruguay.

35.     Plaintiff contends that damages in the amount of $80,700.00 against the Substituted Defendants on account of Jose Abadi's receipt of rent funds and insurance proceeds diverted from the Argentina Apartment total $80,700.00.

36.     Plaintiff further contends that as a result of Jose Abadi's fraudulent conduct and tortious interference, Jose Abadi received not less than $278,039.69 through his participation in the Decision Boundaries scheme in slightly over one year.[6]  Plaintiff further submits that Carlos

---

[5] *See* https://en.wikipedia.org/wiki/Punta_del_Este

[6] Plaintiff believes further funds transfers would have been discovered had there been further opportunity for discovery.

11

Abadi shielded $648,759.27 in funds through Decision Boundaries in between July of 2020 and December of 2021 these sums total $926,798.95. *See* Exhibit "J."

37.    Plaintiff submits that pursuant to NY DCL §276, the Court may and should award punitive damages against the Substituted Defendants in this case, in addition to awarding damages for aiding and abetting a fraud, and common law tortious interference all of which plainly relate to Jose Abadi's conduct.  Plaintiff submits that the Court should exercise its discretion in this matter as Jose Abadi was involved in the day-to-day affairs of the Judgment Debtors in order to frustrate the collection of the Judgment and has acted in such a manner: (i) through his involvement as the common transferee of his son's real and personal property; (ii) through expenditures for legal counsel in the United States to slow proceedings against the Judgment Debtors; (iii) by further establishing the company Decision Boundaries which operated entirely by Judgment Debtor Carlos Abadi; and (iv) for acting as an "agent" in connection with receipt of money for his son in Argentina to further facilitate the transfer of money discussed in the Amended Complaint and herein to stall enforcement of the multimillion dollar Judgment which is outstanding against the Abadis.  Plaintiff submits that the entirety of the unpaid portion of the Judgment as entered on May 17, 2017 in the amount of $4,655,622.23 is an appropriate measure of damages on account of Jose Abadi's participation in connection with the fraudulent transfer of assets, aiding and abetting of the fraud and tortious interference with the Judgment.

38.    Plaintiff submits that an award of prejudgment interest is appropriate under these circumstances and as set forth under the CPLR, interest accrues at 9% per annum on all unpaid obligations.  From September 26, 2019 until April 16, 2025 a total of 2,029 days will have passed with a daily interest rate of $335.22 per day.  Plaintiff contends the sum total of $1,359,499 is due from Jose Abadi ($80,700 + $926,799.95 + $352,000) plus prejudgment interest of $680,159.21

4929-4190-5957, v. 2

for a total of $2,039,658.21.  As set forth above, Plaintiff contends that damages equal to the amount of the original Judgment (without interest) (i.e. $4,655,622.23 is appropriate) for a grand total of $6,695,280.44 *plus* attorneys fees and costs as set forth below.

**Attorney's Fees and Costs**

39.     I attach as **Exhibit "L"** to this declaration is true and correct summary of detailed time records maintained by MLFLLC for services rendered and expenses on behalf of the Plaintiff from November 29, 2021 through January of 2025.

40.     In connection with the services provided to the Plaintiff, MLFLLC rendered services totaling $137,668.57 which is consistent with rates charged by MLFLLC to clients on engagements of this type.

41.     I attach as **Exhibit "M"** to this declaration a copy of the undersigned's web biography.  I have practiced law in this district for more than 20 years and have been recognized by Super Lawyers for the last six years.  Paraprofessional Junho Park (identified as SC) has functioned as a paralegal for 5 years with the Firm at an hourly rate of $150.00 per hour.  I submit that the fees and costs incurred in connection with this matter were reasonable and customary and should be awarded in this matter.

42.     Plaintiff also seeks to recover the sum of $75,906.00 that was incurred in connection with the services provided by Troutman Pepper Hamilton.  *See* [Dkt. 20-1] attached to the Default Application I.

43.     In total, Plaintiff seeks attorneys fees and costs in the amount of $213,574.57 in addition to the anticipated costs and fees of concluding this matter before the Court on April 16, 2025 which Plaintiff anticipates presentation at the hearing.

44.     Attached as **Exhibit "N"** is a draft Default Judgment for the Court's consideration.

Dated: March 7, 2025

_____
Eric S. Medina, Esq.

14